# FOR PUBLICATION

**FILED & ENTERED**

**DEC 08 2015**

**CLERK U.S. BANKRUPTCY COURT
Central District of California
BY** steinber **DEPUTY CLERK**

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>Farshid David Binesh<br>Mojgan Yousefi<br><br><br><br>Debtor(s). | Case No.: 8:12-bk-20432-MW<br><br>CHAPTER 7<br><br>**MEMORANDUM DECISION**<br><br>Date:         November 16, 2015<br>Time:         2:00 PM<br>Courtroom: 6C |

Michael N. Nicastro, Esq. for Chapter 7 Trustee Thomas H. Casey; Farshid David Binesh and Mojgan Yousefi, Debtors, pro se.

**WALLACE, J.**

    This matter comes before the Court on the motion of chapter 7 trustee Thomas H. Casey (the "Trustee") to compel the turnover of estate property (the "Turnover Motion"). The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and General Order 13-05, filed July 1, 2013, of the United States District Court for the Central District of California. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (E).

1  The Court held an evidentiary hearing on the Turnover Motion on November 16,
2  2015. This Memorandum Decision constitutes the Court's findings of fact and
3  conclusions of law as required in contested matters by Federal Rules of Bankruptcy
4  Procedure 7052 and 9014(c).
5  Farshid David Binesh and Mojgan Yousefi, husband and wife (the "Debtors"),
6  filed a voluntary petition under chapter 7 of the Bankruptcy Code on August 31, 2012.
7  Debtors scheduled an interest in real property located at 30 Via Silla, Rancho Santa
8  Margarita, California (the "Residence") and subsequently claimed a $100,000
9  homestead exemption in the Residence on February 21, 2014 on an amended
10 Schedule C form.
11 The Trustee sold the Residence on September 11, 2014 and distributed
12 $74,682.23 in exempt proceeds to Debtors on September 24, 2014. California Code of
13 Civil Procedure section 704.720(b) provides that if a homestead is sold and proceeds
14 are received in respect of such sale, "[t]he proceeds are exempt for a period of six
15 months after the time the proceeds are actually received by the judgment debtor . . ."
16 Section 704.720(b) dovetails with California Code of Civil Procedure section 704.710(c),
17 which defines a "[h]omestead" to include a dwelling acquired by judgment debtors
18 "[w]here exempt proceeds from the sale . . . of a homestead are used toward the
19 acquisition of a dwelling within the six-month period provided by Section 704.720." Also
20 noteworthy in this regard is the requirement of section 704.710(c) that the dwelling so
21 acquired ". . . is the principal dwelling in which the judgment debtor or the judgment
22 debtor's spouse resided continuously from the date of acquisition until the date of the
23 court determination that the dwelling is a homestead . . ."
24 Immediately following the end of the six-month period referenced above – on
25 March 25, 2015 – the Trustee sent Debtors a letter asking them to provide evidence that
26 they timely reinvested the homestead exemption proceeds of $74,682.23 in another
27 residential purchase. The Court's docket shows that at this point in time the Debtors
28 were self-represented (i.e., pro se), the services of Charles W. Daff, Esq. as their

counsel having terminated a little over one year earlier, on March 19, 2014.

There then followed an exchange of emails and other correspondence between the Trustee and the Debtors. The Debtors claimed to have signed a contract for the purchase of residential real estate located at Imam Reza Boulevard 7th Imam Reza Part 111 North Second Floor in Tehran, Iran (the "Replacement Property") at a purchase price of 910 million Iranian rials on February 4, 2015. (The contract document is in Farsi and had to be translated into English). By Debtors' account, the contract for sale provided for a payment of 300 million rials on February 4, 2015, 450 million rials on May 6, 2015 and 160 million rials upon delivery of the Replacement Property. The original closing date for the Replacement Property's purchase and sale was July 6, 2015.

910 million Iranian rials is worth approximately $30,000 to $35,000. Debtors have freely admitted that they used a large portion of the $74,682.23 of exempt proceeds for rent, food and other living expenses.

Ms. Yousefi traveled to Iran in April 2015 to help facilitate the Replacement Property's acquisition. Initially, the Replacement Property was not ready for occupancy because of pending construction but became ready for occupancy between August 2015 and the date of the evidentiary hearing.

As of the date of the evidentiary hearing in mid-November 2015, escrow has not yet closed, Debtors still do not hold title to the Replacement Property and still have not occupied it (and have never occupied it). Their intention is to travel to Iran when this bankruptcy case is concluded and to occupy the Replacement Property as their principal (and perhaps only) residence. As of the date of the evidentiary hearing, Debtors resided in Foothill Ranch, California.

If a judgment debtor receives exempt proceeds from the sale of a homestead and, within six months, pays the full amount of the exempt proceeds "toward the acquisition of a dwelling," California Code of Civil Procedure § 704.710(c), the exemption is not lost and instead carries over to the replacement dwelling/homestead provided that the judgment debtor acquires the replacement dwelling/homestead within

the six-month period and resides continuously in it from the date of its acquisition until the date of the court determination that the dwelling is a homestead.

New construction of a replacement dwelling/homestead,[1] however, can complicate the issue. Consider a case where a judgment debtor receives $100,000 in exempt proceeds on July 1, 2015 and uses the full $100,000 on September 30, 2015 to buy a house that is then under construction and is projected to be complete and ready for occupancy on December 15, 2015. If the replacement dwelling/homestead is in fact completed on December 15, 2015, and the judgment debtor moves in on that date and remains using it as his or her principal residence through the date of the court determination, the exemption should attach to the replacement dwelling/homestead. An objection that the judgment debtor should lose the exemption because of a failure to move in on a purported "date of acquisition" of September 30, 2015 ought to be overruled on the ground that the "dwelling" was not actually acquired until December 15, 2015 – because a dwelling is a "house together with . . . the land upon which [it is] situated," California Code of Civil Procedure § 704.710(a)(1), and a reasonable interpretation of "house" is a house ready for occupancy, not a partially completed structure that may lack a roof, plumbing and electricity.

But suppose that in the foregoing illustration the projection is missed and the replacement dwelling/homestead does not become ready for occupancy until January 31, 2016 (and that the judgment debtor moves in on that date). Is the exemption lost? Arguably it is, because of the provision in California Code of Civil Procedure section 704.720(b) that "[t]he proceeds are exempt for a period of six months after the time the proceeds are actually received by the judgment debtor, except that, if a homestead exemption is applied to other property of the judgment debtor . . . the proceeds thereafter are not exempt." A not unreasonable interpretation of this provision is that it

---

[1] Note that the issues of statutory interpretation discussed in the paragraphs below may also be present if the judgment debtor seeks to acquire an existing house as a replacement homestead but the actual closing is delayed beyond the six-month time window.

places a hard-and-fast temporal limitation of six months on the transmutation of the cash exempt proceeds into a replacement property meeting the requirements of a "dwelling" under California Code of Civil Procedure section 704.710(a) and that if at the end of the six months the judgment debtor is not actually residing in a "dwelling" (as a principal residence), the exempt proceeds lose their exemption notwithstanding that they have been paid toward a property that the judgment debtor intends to complete as a dwelling and to be used as a principal residence. As a technical matter of statutory interpretation, the partially-complete, not-yet-ready-to-be-occupied property would be viewed as "other property of the judgment debtor" under section 704.720(b) and not a "dwelling" because it is unoccupied and incomplete.

Additionally, under the rule of the last antecedent (sometimes referred to as *ad proximum antecedens fiat relatis, nisi impediatur sententia*),[2] a limiting clause or phrase (here, the phrase "within the six-month period provided by Section 704.720") should ordinarily be read as modifying only the noun or phrase that it immediately follows (here, "the acquisition of a dwelling"). Although the rule is not absolute and can be overcome by other indicia of meaning, the Supreme Court of the United States regards construing a statute in accord with the rule as "quite sensible as a matter of grammar." *Barnhart v. Thomas*, 540 U.S. 20, 26, 124 S. Ct. 376, 380 (2003). Consequently, a "dwelling" must actually be acquired within the six-month period, and it is not sufficient if the proceeds are used within the six-month period but the "dwelling" itself is acquired beyond the close of this period.

Against this it could be contended that as long as all the exempt proceeds are "used toward the acquisition of a dwelling within the six-month period," it doesn't matter that the house isn't yet complete at the end of the six months as long as the judgment debtor occupies it as a principal residence as soon as it first becomes ready for occupancy, even if that is seven, eight, nine or more months after the exempt proceeds were first received by the judgment debtor. This interpretation would have the six-

---

[2] *See Brown v. Brown*, 42 Del. 157, 165, 29 A.2d 149 (1942).

month rule applying to the expenditure of the exempt proceeds, not the actual acquisition of a qualifying "dwelling" within that period – and thus would fly in the face of the rule of the last antecedent.  This is an unlikely result in light of the weightier arguments outlined above indicating that a "dwelling" itself must be acquired within the six-month period.

Fortunately, these difficulties of statutory interpretation are not presented here because Debtors have not yet occupied the Replacement Property as a principal residence even though it stands ready to be occupied as such.  Instead, Debtors reside in Foothill Ranch, California.

The Debtors' portion of the sales proceeds from the Residence's sale and with respect to which they claim a homestead exemption (i.e., the $74,682.23) loses its exempt status if not reinvested in a new homestead within six months.  *Wolfe v. Jacobson (In re Jacobson)*, 676 F.3d 1193, 1197 (9th Cir. 2012).  Here, the Replacement Property is not a "homestead" within the meaning of California Code of Civil Procedure section 704.710(c) because they have not resided in it continuously from the date of its acquisition until this Court's determination of whether the Replacement Residence is a "homestead."  Indeed, the Debtors not only have failed to reside in it "continuously," they have not resided in it at all.  Because no portion of the $74,682.23 was ever reinvested in a "homestead," no portion of the $74,682.23 is now exempt.  Although once exempt, the exemption has been lost as explained in the *Jacobson* case.

Debtors argue that California's homestead exemption law is unfair because they needed to use the previously-exempt moneys to buy the necessities of life, such as food and shelter (for which they paid rent).  However, there is no necessities-of-life exception to California's six-month reinvestment rule for homestead exemption proceeds, and this Court obviously has no authority to enact new California statutory law on the subject.  That is a matter for the California legislature.

For the foregoing reasons, the Court grants the Turnover Motion and orders the

Debtors, jointly and severally, to turn over the sum of $74,682.23 in immediately available United States dollars to the Trustee within 60 days of the date of entry of this Memorandum Decision.

**IT IS SO ORDERED.**

###

Date: December 8, 2015

Mark S. Wallace
United States Bankruptcy Judge